MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Littice Jones

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**v.**

Delta Airlines, Inc.

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case: 2:24-cv-11224
Assigned To : Steeh, George Caram
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 5/8/2024
Description: CMP JONES v DELTA AIR LINES (JP)

Jury Trial:  ☐ Yes  ☑ No
*(check one)*

## Complaint for Employment Discrimination

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Littiece Jones |
| Street Address | 45014 Trails Ct. |
| City and County | Canton   Wayne |
| State and Zip Code | MI   48187 |
| Telephone Number | 313-515-9797 |
| E-mail Address | LRBJ_99@yahoo.com |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Delta Air Lines, Inc |
| Job or Title (if known) | |
| Street Address | 20602 World Gateway |
| City and County | Detroit, MI 48242 Wayne |
| State and Zip Code | MI   48242 |
| Telephone Number | (229)508-9682 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

2

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

Defendant No. 3

      Name                _____

      Job or Title
      (if known)          _____

      Street Address    _____

      City and County   _____

      State and Zip Code  _____

      Telephone Number  _____

      E-mail Address
      (if known)          _____

Defendant No. 4

      Name                _____

      Job or Title
      (if known)          _____

      Street Address    _____

      City and County   _____

      State and Zip Code  _____

      Telephone Number  _____

      E-mail Address
      (if known)          _____

**C.**     **Place of Employment**

    The address at which I sought employment or was employed by the defendant(s) is:

      Name              Detroit Airport (DTW)

      Street Address    20602 World Gateway

      City and County   Detroit   Wayne

      State and Zip Code  MI  48242

      Telephone Number  (229)508-9682

MIED ProSe 7 (Rev 5/16) Complaint for Employment Discrimination

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:



☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

☑ Relevant state law *(specify, if known)*:

☑ Relevant city or county law *(specify, if known)*:

4

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

### III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☑ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*: Religion Accommodation;

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s) October 2023- Ongoing

C.   I believe that defendant(s) *(check one)*:
- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☑ religion _____
- ☐ national origin _____
- ☐ age. My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)* Long covid; anxiety; Pelvic Floor Dysfunction

5

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

E.     The facts of my case are as follows.  Attach additional pages if needed.  *Please see attached pages.*

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

6

MIED ProSe 7 (Rev 5/16) Complaint for Employment Discrimination

## IV. Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

2/07/2024

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*

2/9/2024

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Attach additional pages if needed.

Please see attached pages

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _May 8_____, 20_24_.

Signature of Plaintiff _____Littiece Jones_____

Printed Name of Plaintiff _____Littiece Jones_____

MIED ProSe 7 (Rev 5/16) Complaint for Employment Discrimination

**Additional Information:**

**Delta Airlines**

**Detroit Airport (DTW)**

**20602 World Gateway**

**Detroit, MI 48242**

**(229) 508-9682**

DTW Delta Air Line (Respondent) has discriminated against me with respect to Disability, Religion, Retaliation. I began working for the above-named employer on or around October 8, 2012. I currently work as a Customer Serbvice Agent(Below Wing). From the start of my employment, I have kept management informed about my need for religious accommodation. At the time of and before my hiring, I informed management that I would be unable to work between sunset on Friday to sunset on Saturday because of my religious beliefs. It was determined that I could utilize shift-swapping to accommodate this. For the first almost 12 years of my employment with the respondent, there were no problems with this accommodation. In or around August 2023, I reported safety concerns to my management and Human Resources(HR). I also reported my manager for harassment. I am also an individual with a disability and in close relation to individuals with disability. I have kept the Respondent informed about my and close relatives disability and continued to perform my work duties successfully. In or around October 2023, management threatened to take away my ability to shift swap. I believe that this threat was in retaliation for my prior complaints and in retaliation for disclosing my and close relatives disabilities. I am a devoted employee, and I take my work seriously, but I am concerned that any action that the respondent takes to deny me shift swapping privileges would eliminate a religious accommodation that has proven effective for 12 years and was granted before hiring and is in retaliation for voicing concerns.

I believe that I was discriminated against because of my religion and disability, and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and Title 1 of the Americans with Disabilities Act of 1990, as amended.

**Background**

    I was  hired on or around October 8, 2012, to work as a Seasonal Ready-Reserve Agent Below Wing in the ACS/Cargo Department (at DTW). At the time of hire, Below Wing included Ready Reserve (RR) and Benefitted-Full Time/Full Time Equivalent(FT) Customer Service Agent(CSA). RR employees were either Permanent or Seasonal with minimum/maximum hour requirements without medical benefits. Below Wing employee duties include, but are not limited to; ramp safety, loading and unloading aircraft baggage, guiding planes to and from their gates, operating baggage carts, de-icing planes, and performing other airplane servicing and safety duties.

    Delta offers employees swapping, or trading, which is a privilege that affords personal flexibility in their work schedules. Before hiring, Delta gave me shift swapping as a reasonable religious accommodation as a Seventh- Day Adventist Sabbath(Friday sunset to Saturday sunset) keeper. Swaps are permitted between Fulltime, Part Time, and/or Ready Reserve employees within the same department and same job category, or between employees in different, but relatable work areas (ex. ramp and bagroom or ticket and gates).

    I started as a seasonal RR employee required to work a minimum of 300 hours and a maximum of 800 hours. In ▓▓▓▓▓▓ 2014, the company changed seasonal ready-reserves to permanent ready reserves with the requirement of 300 hours minimum and 1300 hours maximum. Years later, the company changed the  Ready Reserve hours minimum to 600 hours and 1300 hours maximum. Throughout my employment, I met and/or exceeded all of the company's minimum hour policy requirements within the timeframe guidelines.

    In 2021, the company sunset the Ready Reserve program and Delta introduced a new Seasonal and Benefited CSA group for the ACS/Cargo Department. Employees would have to electronically opt into one of the two groups: a) a new seasonal program with 150 hours minimum and 800 hours maximum between October 16 and October 15 of the following year without medical benefits, or b) a new CSA benefitted program. The new benefitted program would offer CSA  full time and full time equivalent  lines(schedule) ranging from 20 hours up to 40 hours per week.

    Per company guidelines, terms, and conditions, benefitted agents who worked less than 1000 hours between Oct. 16 and Oct. 15 of the following year would have to pay 100% of their benefit premiums.  Benefitted agents that worked at least 1000 hours between Oct. 16 and Oct. 15 of the following year would maintain  the active employer/employee shared premium benefit rate. CSA agents who opted out of benefits would not be affected and had no minimum/maximum hour requirement.

    I chose to opt into the new CSA benefitted program as a part time agent with 20 hr./week schedule. During this time nor prior to, did the company ever notified nor introduce a policy of

20 hour weekly average over a rolling 3 month period to RR agents as well as new hires who began after the 2021 sunset/new seasonal or benefitted roles/program.

Throughout my employment, I have voiced safety concerns and have been actively engaged in various TDY assignments, volunteer company events and meetings, station and safety town halls, including being selected to be an advisor in Delta's Diversity, Equity and Inclusion(DEI) work committee.  The hours I spend in DEI meetings and events are a combination of volunteer and paid work hours.

## Safety Concerns
I have voiced safety concerns with equipment and safety checks of equipment(EPOIs) since introduction on springshot devices and implemented in or around 2021(?).  These concerns by myself and other employees were often times ignored and dismissed by leadership.

## Events of August 1, 2023

On August 1, 2023, online(OL)CSA started at 7:30am, but our assigned flight landed on the ground 10 -15 minutes prior to our shift start time. As a result, we were rushed to the flight by leads/management and not able to complete the EPOI(saftey check) of equipment. By the time we(OL runners/employees) got to the gate, there were numerous bags on the ground which was a safety and safety zone hazard. Typically, runners and ramp crew are set up at the gate before your flight arrives. On this day, however, due to the aforementioned, the ramp crew had already started piling bags in and out of the safety diamond zone, around the belt loader, and aircraft. I called a safety time out at that time as it was unsafe to continue as bags were everywhere on the ground resulting in tripping and injuries risk. I did this to stop the ramp crew from unloading any more bags so that we could safely load the bags that were on the ground and proceed with our job duties. I followed safety time out protocol as trained in previous years. The company has since upgraded safety time protocol and procedures that include different and additional steps yet I was not privy nor assigned and completed that training of new safety time out until months after August 1, 2023.

I reported this over the radio to leadership including OSM Rob O'Leary and to Jeff Simonin (Rob's Manager) on 08/01/23. I also later reported this in a "Speak Your Mind Session" with leadership including VP Hussein Berry on 08/09/23 and to HR manager Tenia Russ.

In another incident that day, Rob wanted me to do some of our on-going training and FBI/Homeland Security fingerprinting that day.  I shared with him that I was watching my assignments line for when he would assign that task/puck to my line (put a reservation for the job security and training in my schedule for the day).  Rob refused to assign me a task for my line instead berating me. I inquired with the radio as to when it may be a good time for me to complete tasks and as a result they put a puck on my line for job training/tasks per normal process.  This was not the first time Rob had refused to put a puck in my schedule and without

this puck reservation of time, I have experienced schedule conflicts. For instance, I might be assigned another flight when Rob wanted me to perform another duty and then he would accuse me of not doing or being at one or the other double booked job tasks.

After being assigned tasks, Rob came by my area to check on my whereabouts and to report me to Jeff Simonin. About 15 minutes later, Rob emailed me to ask if I was done yet and this was a pattern of extreme criticism, false accusations of work performance/training completion, etc. I saw Jeff Simonin, Rob's supervisor, and shared my concerns about the morning's safety incident and my concerns with Rob's harassment and inappropriate conduct. I also showed Jeff Rob's numerous and demanding text messages to me while I was off the clock. I told Jeff that I felt Rob's texts, refusal to task my line yet demand job duties including while not at work were inappropriate and retaliatory. During my meeting with Jeff, he shared that Rob should not have been sending me the texts yet gave a managerial perspective as to perhaps why Rob may have.

**January 17, 2024**

On 1/17/24, my tug vehicle/equipment broke down and I notified leadership immediately. A lead pushed me while in the tug across an active taxi-way. This is a safety and FAA violation yet common practice at DTW. I was on the radio, and someone asked me why the tug stopped. At first, we thought it was out of gas, but it turns out the gas gauge was broken and it was another unknown issue. The lead was able to get it to start and followed me back to the break room where I was criticized for responding when asked over the radio that I had been pushed in the tug as this was a safety violation in which I did not know as pushing broken down equipment is a common practice at DTW. There were no other tugs available for me to use and as a result, I followed up with Rob who approved me to continue using the tug but to drive it to the shop in which I did. While at the shop, I was assigned another flight/task in which leads incuding Rob ultimately had me leave the shop, continue with assigned tasks for remainder of shift, and to await their further direction with tug TBD.

When my shift was completed, I was retaliated against by Rob O'Leary who publicly berated, humiliated, intimidated, threatened with disciplinary action, falsely accused, refused to allow me to leave although I was off the clock, harassed, provoked, and aggressively abused his managerial authority and power. He falsely accused me of not being in safety PPE compliance with not wearing my bump cap although I shared with him that I had just taken it off and put it in my locker at the end of my shift and I was now off the clock. His abuse of authority was in retaliation for my reporting of safety concerns earlier in the day as he was provoking in an attempt to get me to admit to something that I did not do so that he could have disciplinary action against me for my reporting that day. Rob would keep me past my end time at work being very aggressive and demanding that I answer his questions even while I was off the clock. I shared with Rob that I was off the clock and if we could follow up at another time to which Rob stated that I was still on company property and I was refusing to answer his questions, which was not

true, as I had answered his questions numerous times but he wanted me to admit to his false accusations which were not true. He did this publicly for over 30 minutes in which other employees heard him berating me. His supervisor Ron Cook, also heard him and came in the area but allowed Rob to continue to publicly humiliate, criticize, falsely accuse, intimidate, threaten discipline, and keep me hostage as I requested to be allowed to finish what I was doing as I was off the clock.

**Events of August 9, 2023**

For August 9, I had been selected to attend a discussion concerning a new uniform design. Rob saw me at the meeting and criticized me for not having my hair up. When I am working as a Customer Service Agent (CSA), I always follow the safety requirement to have my hair up. However, in a meeting where there is no safety concern, Rob's criticism of my hair was unwarranted. Furthermore, I have seen another CSA wear her hair long and loose during her work hours, and to the best of my knowledge, Rob did not criticize her.

Around August 9, 2023, I was invited to a "speak your mind" session with higher level executives. During that session I voiced safety concerns about equipment, EPOIs, work areas, management had given us flights before our start times (such as on August 1), and other concerns that employee workgroup had conveyed. There were about 35 employees and leadership there including Hussein Berry, Tenia Russ, Darrin Parker, Eric Pricco.

Also on August 9, I met with Human Resources representative Tenia Russ. I reported the events of August 1, including the safety issue, as well as Rob's inappropriate behavior, including texting me while I was off the clock, refusal to task my line, and concerns about the average 20-hour per week policy, etc. During the meeting, Tenia constantly interrupted me and didn't take my concerns seriously. She shared that she did not see anything wrong with Rob's conduct, etc. Tenia explained the policy but was unclear about the rolling three month aspect of it and could not provide more details as to notification to employees, new benefitted program 2021, etc. She also explained how me not coming to work effected the full time equivalency or numbers for the company"s count?? She told me she would get back to me about the policy but never did.

.

My supervisor Robert O'Leary (Rob) began to harass me and seemed to be looking for any reason to criticize and single me out. I believe he did this in retaliation for my bringing up safety issues, reporting his harassment, and also because I had been absent with Long Covid, which is considered a disability.  I had also been absent supporting my daughter, who was a victim of a crime which resulted in disabilities related to being victim of crime.  In addition to harassment, he also inquired in a way I found inappropriate into my personal life. Rob continued to make disparaging comments and falsely accusing me which created a hostile work environment. Rob also made it difficult for me to receive Personal Protection Equipment(PPE),  he frequently complained to me about the hours I spent in DEI-related activities and claimed that he never saw me other than in DEI meetings.  He texted me repeatedly while I was off the clock to hound me to complete my training (going so far as to suggest I complete it at home while off the clock) even though I had made  arrangements with the training department, completed the training, and it was only because of an IT issue,  which he had been informed of, that my completion was not showing up in Delta's system. Rob also would ostracize me by calling the training department to have them make sure that I was in the training department, text, and email me as if I was not where I was supposed to be. Rob also demanded that I complete work related things while off the clock and on the same day that he would text me, falsely stating that I had to do them that day when in reality, the item was not due for over another month to several months later. Due to the frequency and harassing nature of his texts, I requested that he not send me text messages but send work related items to my work email instead. Rob continued to text me.

Examples:  In July 2023, while I was off the clock, Rob texted me to say I had to take care of an incomplete fingerprinting issue that same day.  I called the Employee support Center, and they told me that I had up until January 2024 to complete the fingerprinting and I did NOT have to come in that day. It was at this point that I let Rob know that I would appreciate it if he could communicate via work email rather than text–unless an emergency–while I was off the clock.

**Events of October 31, 2023 and November 1, 2023**

On October 31, 2023, Rob pulled me into a mandatory one-on-one meeting, which was also attended by Niko Vinuya, an OSM (manager supervisor). During this meeting, Rob asked me about my family life, specifically about my daughter while other employees were in the office. He proceeded to ask about details of the crime where my daughter was victimized. Rob complimented me for "staying busy" and working with DEandI and FIT and asked me if I planned to switch roles within the company. He then told me I wasn't working enough hours and that he had sent me an E-mail explaining a 20 hour/week (average over a rolling 3 month period) requirement. I questioned the fact that this policy was never shared with employees when we became benefitted in 2021. There was also no forum for employee education on this policy as Delta has offered in the past. I brought up that no one else's schedule was critiqued, just mine. This made me feel singled out, which I verbalized. I clarified that I requested a leave of absence due to my daughter's victimization (which was approved). Later, I got Covid, took vacation days,

and the other days were either traded or swapped and Jeff Simonin(Rob's supervisor) advised me I was not in trouble or at risk of discipline in any way. This entire meeting was held with the office door open for the first half hour with other employees walking by. Once the office door was closed, I explained the seriousness of the issue involving my daughter and that our lives were altered, forcing an ongoing legal situation as well as ongoing medical care. On this date, I filed a claim with Sedgewick to file a retroactive leave of absence as Niko suggested.

Earlier in this meeting, Rob noted that Delta offers a 2500 mile/$25 bonus if a bag doesn't get delivered to the baggage claim within 20 minutes. Later on this same date, I was called to meet with Nick Cook. Nick told me about this 20 minute rule and told me to be "conscious of the routes I'm taking". I explained that on the flight in question (A25) the employee I was working with did not show up, leaving me on my own to unload the bags. The absence of the employee also left me with insufficient time to perform the required safety check (EPOI). While he said it "wasn't on me", I felt as if I was being singled out again since I was called to the office in the first place and he was writing it up in my employee record/journal.

November 1, 2023 Sedgewick returned my call and I let Rob know that I had contacted them as requested. I explained that I didn't qualify for FMLA but they were looking into a caregiver leave of absence. Additionally, I told him Jeff told me my shift trades were safe and that we had a conversation about it back in August. The conversation with Jeff occurred when I advised him of Rob texting me on my days off and also the safety issue (See August 1st). He noted he didn't know about this conversation because I didn't use the proper chain of command. The reason I went to Jeff in the first place is to report Rob texting my personal phone on my days off and the fact that his refusal to "puck my line" when he assigned a different work related task. He chastised me for talking to other managers.

He told me that he had been using my employee journal as a "tracking" and had put a note in there listing "personal issues" because they are affecting my work with Delta. I asked Rob why he was putting personal information about me and my family into my employee record as any manager can see what you enter in there. Rob responded that other people would be assured he is doing his job. Rob said "You need to call and talk to Tenia, she is the one who told me to put [the information] in your record." He said, "That is protocol". I brought up that I didn't know why personal issues (even though he said it was not specific) needed to be in my file at all, potentially jeopardizing future career growth with Delta. I have an e-mail from Rob documenting my employee record/journal entry that states I have been utilizing EAP, receiving counseling, and therapy for my personal life issues. This should all be confidential and protected information. He suggested that I go speak to Tenia to clarify as she was the one who told him to put it in my employee record. I asked when Tenia had told him this and he informed me that she told him to add these things to my record. Rob noted he tracks my attendance because he gets an e-mail when I call off. I corrected him by saying I never call off.

Later in the day, I looked for Rob and he wasn't there so I spoke to Jeff (Rob's manager). He immediately brought up my hours and the fact that Rob was texting me on my days off. Jeff asked me when I would be able to work my full shift and I explained that the situation with my daughter is ongoing and unpredictable.

 In addition, Rob informed me that because I was not averaging 20 work hours per week my shift trading privileges could be taken away. I told Rob and Niko that I felt I was being singled out for scrutiny of my hours and possible revocation of trading benefits.  I knew many fellow employees who I did not think averaged 20 work hours a week and to the best of my knowledge they had not been subject to criticism or potential shift trading privilege revocation.

It is my opinion that I was being treated differently than other employees because I had raised safety concerns, had reported Rob to HR and various leaders, and I raised concerns regarding my employer violating the ACA. Also, As it relates to the Affordable Care Act, Human Resources still has not given me the tax forms 1095-C for the years 2021 to 2022 to file. My concern with ACA is that due to my disabilities and that of my daughter's, I worked less than 1000 hours in the company guideline policy and my company is retaliating by creating new policies after the fact so that I have to work more hours so that I pass the 1000 hour threshold requirement so that I will have to pay the insurance and ACA premium and not qualify for the ACA tax subsidy. In addition, I believe that not only myself but the company is violating ACA with employes systemwide. The company often times creates new policies after the fact without legally notifying employees in order to fit their narratives and cover/protect the company with safety issues, ACA, and other issues. The company will then mandate and target employees to "Read and Signs" and acknowledgement of other newly created policies without employees knowledge and to be able to manipulate situations in which the company may be in violation of.


After that I contacted/called Hussain Berry, Regional Vice President, and asked if we could meet and shared my concerns. I met with him in person. During my meeting with Hussain, I shared with him that I had these concerns about Rob and basically how after I met with Taneia, Rob pulled me in on the one to one and put these things in my employee record/journal. For example, Rob had told me that I had received help and counseling and therapy EAP, employee assistance program.  I also asked Hussain about the hourly schedule issues. I have been asked to work more than my scheduled hours (I was asked to work over recently) and Rob also threatened me with taking away my hours. More details with Hussein Berry


In 2021 they introduced the benefit to opt in or opt out the minimum and maximum hours we would have to work in order to have the employer/employee shared cost. If we worked under that 1000 hours, we would have to pay 100% of that cost. But now Rob is saying that I have to

work a min of 20 hours which will put me over the 1000 hours. Tania told me through email that she didn't know what the 100% cost would be. But I am concerned as to how I would pay the employee shared cost – nothing ever came of my emails with Tania.

I believe that Delta management/leadership is retaliating and they contacted Corporate HR(Antonio Bush) not to resolve my concerns but as retaliatory measures to protect the company and use the information that they mandate me to provide against me to terminate me for raising safety, retaliation, and ACA concerns . I think the employee premium cost under the ACA is higher than what they have told us and I know there's a formula. Now that Delta is implementing this new employer/employee shared cost, it's my belief they are violating that act by making me come in to work my full shift at a full time rate.

Right now, I'm at $26.54 per hour. So if I work 20 hours, that will put me over my formula for the lower shared rate. To my knowledge, 1,040 hours puts you in the employer/employee shared responsibility under the ACA then Delta would have to pay the 100% premium rate. But when I emailed HR to confirm this, I was told, "The market rate changes daily."

I believe that I was discriminated, harassed, and retaliated against with respect to "compensation, terms, conditions, or other privileges of employment" (i.e. requirement to increase/decrease work hours,  violation of Delta's flexible worker hours agreement and new 2021 benefitted CSA employee role terms, conditions, and agreement, because of my reporting for myself and employee workgroup 1) Safety concerns, 2) Harassment and Retaliation, 3) Violation of ACA including but not limited to Title I, refusal to participate in an activity the employee reasonably believes violates ACA including but not limited to Title I, and/or receives a tax credit or cost-sharing reduction under ACA. eduction of hours and then requirement to increase my hours is a form of harassment that violates Delta's flexible worker hours agreement, new benefitted employee program terms and conditions for opt-in, and is related to my speaking up about safety issues, retaliation/harassment, and for notifying the company of concerns about aspects of premiums, Affordable Care Act. I believe that  I want OSHA to expunge my employee record of all disciplinary action that relates to my speaking up about safety incidents and/or all inquiries about my enrollment in the Affordable Care Act. I would also like for OSHA to reinstate me to positions that leadership demoted me from. Employee workgroup would benefit from OSHA reviewing Delta's Safety/etc reporting processes and protocols and provide training and/or recommendations so employees feel safe to report concerns without fear. I would also like OSHA to require Delta to post signage that informs other employees about their rights to raise safety, Affordable Care Act, and other concerns with statues under the scope of OSHA without

discrimination. It will benefit the company and employee workgroup to do an inspection of DTW equipment and operational areas for safety compliance.

Dates/timeline

In or around 2018/2019- I and other employees met with Hussein Berry and leadership to share operational, safety, and workplace concerns. I shared

June 2023 and previously- Reported safety concerns

July 2023- Reported safety concerns to Rob O'Leary with Jessica Osbourne regarding Rob O'Leary and new policy. JO shared that it had not been implemented but they were considering it especially because when you have insurance.

August 1, 2023- Punched in at 7:24am for start time of 7:30am. 7:30am there were no flights assigned to OL CSA agents with 7:30am starts. At or around 7:35am, we were assigned flights that were already on the ground prior to our start time. As a result, CSA agents were rushed to the flights by leads/leadership and unable to do/complete our epoi safety checks.

Upon arriving to my assigned flight's gate, I called a safety time out due to hazards and risks of injury and aircraft/equipment damage. Since this time, safety time out training and procedures have been updated to include additional and new steps/protocols.

I also had been subject to Rob O'Leary's harassment, falsely accusing me of poor performance, and refusal to provide PPE, and other managerial duties.

DEI AANHPI event- May 23, 2023

FIT/DEI event- October 2023 Keiya Newell, Rob O'Leary, Karen Essa, reported to leader

VELVET December 2023/2024- Rob O'Leary

DEI event- Gleaners July 12, 2023

October 31, 2023: 1st shift AM- (Retaliatory) OSM Robert O'Leary (R.O.),OSM Nikko Vinuya- Called me into office for employment record/journal entry- Notified me of new local bags policy/requirement, interrogated me about personal/life "family life" situations with my daughter,

October 31, 2023: 2nd shift PM- (Retaliatory) OSM Nick Cook called me in office for employment record/journal entry for local bags incident

November 1, 2023- (Retaliatory)R.O- called in office

November 3, 2023- (Retaliatory) Ben from ESC denying your trades in schedule, had to advocate for shift/trade policy to be followed

November 9, 2023- Met with Vice President Hussein Berry

November 10, 2023- (Retaliatory) ramp-in task, job out of my area/role of online/transfers. Ramp-In is a different job role which requires different safety procedures, and safety PPE including safety wands, knee pads, headset, belt loader, safety check EPOI of equipment, etc which was either not provided and/or not included or done.

November 29, 2023- Tenia Russ (HR), Jeff Simonin (GM), Hussein Berry (VP),Hussein Berry requested meeting with him as follow up to November 9, Tenia Russ included herself and Jeff Simonin in meeting.

December 1, 2023- Called EAP at 1:15a due to on-going harassment, to talk to someone

December 6, 2023- Delta lead said they had been calling for over an hour, looking for me. It had not been that long, maybe 10-15 minutes and falsely accused me of not taking local bags to the belt which would result in write up but it was not true.

December 9, 2023: (6:00p)- Tried to write me up for a safety check (EPOI) not done, though it can only be done once a day. I showed that I tried to submit via spring shot device. No write up

December 16, 2023:(Midnight Reroute shift)Was made aware by coworker that their was a DEI event email that was sent out and I did not receive invite to see "The Color Purple".

December 17, 2023- Completed Safety Time-Out Training

December 17, 2023: (6:00a)- reported equipment being stored in zipper row, in rainy conditions

January 17, 2024- This morning tug broke down, had to still drive it for the rest of the day, I reported this as a safety concern. A Lead pushed the tug vehicle and myself in an

active runway zone. I was criticized for sharing this over the radio and I reported this to my manager.  Robert O'Leary, kept me for 35 minutes, harassed after shift for taking PPE stuff off after I completed my work shift. I was completing paperwork at this time, off company time. (Had just came back from two week vacation)

January 17, 2024: (12:08p)- Corporate Office called Antoino Bush (HR), reported what happened earlier to Antonio

January 24, 2024- Robert O'Leary, asked me "are you with us today." He told me about a 20-hour rule, he hadn't showed me how to find it in the portal. I made him aware that the new benefited transition program did not state this policy. *Highlighted to go back and fill in more.*


January 26, 2024-

January 31, 2024: (Retaliatory) (10:10a)- Called to a coaching meeting with Robert O'Leary, he stated they are doing one to one meetings with everybody. Employee Record/journal entry

February 2, 2024- RO

February 2, 2024- Phone call with Antonio Bush (Corporate HR)-wants timeline of history of Rob O'Leary text messages, emails, etc that shows examples of harassment within chronological order.

February 2, 2024- Phone call with Exec. Eric Snell shared that head HR took a look and their was nothing personal in my journal that would suggest that they are watching and/or tracking me. I shared that my main concern is with my OSM Robert O'Leary, HR Tenia Russ, and VP Hussein Berry. Felt that this could have been resolved with a conversation earlier when I first reported my OSM to HR on August 9, 2024. When I met with Rob on November 1, 2024, he shared that HR Tenia Russ directed him to do so. I do have something that I want to share with you all but have hesitation. Antonio Bush is a neutral party to take all of the facts and take the best course of action. I shared that their were concerns with Antonio Bush. Eric Snell will work with HR that Antonio Bush will share with HR. Want to hear feedback. Retaliation concerns.

February 2, 2024- Phone call with Antonio Bush (Corporate HR)

February 3, 2024- 1st shift (OL) Did not have a safe assigned tug(running hot) or springshot(ran out), was not able to complete safety EPOI of equipment at beginning of shift and shared with LCO. An 1.5 hr after shift start, tug previously used was assigned to me and was shared that someone had completed a safety EPOI on it earlier.

February 3, 2024- 2nd shift(Re-route) Did some leg work for statement

February 5, 2024- Antonio Bush call- Shared for me to take my time in writing a statement of what we had previously discussed as he did not have any further questions although we did not go over my concerns. Discussed safety concerns for shift on Feb 3 and it was ok for me to share those concerns with leadership. Antonio also brought up his concerns that I had spoken with and contacted Erick Snell and I had not shared that information with him. I shared that Erick reached out to me on behalf of Ed Bastian. I shared concerns of conflict of interest amongst leadership and concerns that the process is not a neutral process concerns with Leadership communicating with each other regarding the process, etc. Antonio at the time was not interested in all of my concerns and only select things that were shared with him from leadership. Also, shared concerns that company refused to provide company policy and procedures when requested and would only share after the investigative process which raises concerns for additional retaliatory discipline for raising safety and other concerns. This raises additional concern of fair, neutral process and the integrity and resolve. Also, Antonio was unclear in Company policy and processes and that was no adverse action to me but the company was not sure how they had rolled out the company policy of average hours and that payroll does an audit and it is a heads up as no one's shift swaps have been revoked. How did this all start and when were employees told of this company policy? Employee workgroup  are concerned about unknown, unclear company policies. Antonio let me know that his conclusion was that this was not because of my reporting of safety concerns. He was not finding my concerns regarding retaliation of sharing safety concerns to be valid. He shared that he is only able to make recommendations to station leadership and station leadership decides what further action, if any, they will take.

There has been more incidents past the date of this filing on or around February 8, 2024 and it is ongoing so much so were it has negatively affected my health and

I believe that I was discriminated, harassed, and retaliated against with respect to "compensation, terms, conditions, or other privileges of employment" (i.e. requirement to increase/decrease work hours,  violation of Delta's flexible worker hours agreement and new 2021 benefitted CSA employee role terms, conditions, and agreement, because of my reporting for myself and employee workgroup 1) Safety concerns, 2) Harassment and Retaliation, 3) Violation of ACA

including but not limited to Title I, refusal to participate in an activity the employee reasonably believes violates ACA including but not limited to Title I, and/or receives a tax credit or cost-sharing reduction under ACA.

Reduction of hours and then requirement to increase my hours is a form of harassment that violates Delta's flexible worker hours agreement, new benefitted employee program terms and conditions for opt-in, and is related to my speaking up about safety issues, retaliation/harassment, and for notifying the company of concerns about aspects of premiums, Affordable Care Act. I believe that  I want EEOC to expunge my employee record of all disciplinary action that relates to my speaking up about safety incidents and/or all inquiries about my enrollment in the Affordable Care Act. I would also like for EEOC to reinstate me to positions that leadership demoted and blacklisted me from. I would like EEOC to award any monetary damages and any unpaid wages. I would like EEOC to


There are some incidents and details that I left out due to time constraints and ability to complete.

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jones, Littiece

**DEFENDANTS**
Delta Air Lines, Inc.

**(b)** County of Residence of First Listed Plaintiff Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Wayne
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & / 367 Health Care/ | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | Slander Pharmaceutical Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / 368 Asbestos Personal | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 340 Marine Injury Product | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 345 Marine Product Liability **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 350 Motor Vehicle / 370 Other Fraud | 710 Fair Labor Standards Act | | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 355 Motor Vehicle / 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 195 Contract Product Liability | Product Liability / 380 Other Personal | 740 Railway Labor Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | 360 Other Personal Property Damage | 751 Family and Medical Leave Act | 862 Black Lung (923) | 890 Other Statutory Actions |
| | Injury / 385 Property Damage | | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | 362 Personal Injury - Product Liability | 790 Other Labor Litigation | 864 SSID Title XVI | 893 Environmental Matters |
| | Medical Malpractice | 791 Employee Retirement | 865 RSI (405(g)) | 895 Freedom of Information Act |
| 210 Land Condemnation | **CIVIL RIGHTS** **PRISONER PETITIONS** | Income Security Act | | 896 Arbitration |
| 220 Foreclosure | 440 Other Civil Rights **Habeas Corpus:** | | **FEDERAL TAX SUITS** | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 441 Voting / 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | |
| 240 Torts to Land | [X] 442 Employment / 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | |
| 245 Tort Product Liability | 443 Housing/ Accommodations / 530 General | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 445 Amer. w/Disabilities - / 535 Death Penalty | | | |
| | Employment **Other:** | **IMMIGRATION** | | |
| | 446 Amer. w/Disabilities - / 540 Mandamus & Other | 462 Naturalization Application | | |
| 1142 | Other / 550 Civil Rights | 465 Other Immigration Actions | | |
| | 448 Education / 555 Prison Condition | | | |
| | / 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes
                                                                                             ☐ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
              discontinued or dismissed companion cases in this or any other     ☐ Yes
              court, including state court? (Companion cases are matters in which  ☐ No
              it appears substantially similar evidence will be offered or the same
              or related parties are present and the cases arise out of the same
              transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/08/2024

**To:** Littiece Jones
45014 Trails ct
CANTON TWP, MI 48187
Charge No: 471-2024-01223

EEOC Representative and email:   JOSHUA LUMSDEN
Investigator
joshua.lumsden@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 471-2024-01223.

On behalf of the Commission,

Digitally Signed By:Ramiro Gutierrez
02/08/2024
Ramiro Gutierrez
Director

**Cc:**


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 471-2024-01223 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Michelle Eisele, 101 West Ohio St Suite 1900, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 471-2024-01223 to the District Director at Michelle Eisele, 101 West Ohio St Suite 1900, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.